J-S39028-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: A.R., MINOR CHILD | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.T., BIRTH FATHER | No. 180 WDA 2017 |

Appeal from the Order Dated December 28, 2016
In the Court of Common Pleas of Washington County
Orphans' Court at No(s): 63-OC-2016-0379

BEFORE:  BENDER, P.J.E., BOWES AND STRASSBURGER,* JJ.

MEMORANDUM BY BOWES, J.:                                    **FILED JULY 31, 2017**

L.T. ("Father") appeals from the order involuntarily terminating his parental rights to his daughter, A.R., pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1) and (b).[1]  We affirm.

The trial court summarized the pertinent facts as follows:

> The Mother of the child is [T.Z. ("Mother")].  The Mother and Father were living together in . . . New Mexico when Mother became pregnant.  Sometime during her pregnancy she returned to Pennsylvania where she had previously lived.  Father testified that Mother came to Pennsylvania to avoid being arrested for outstanding warrants in New Mexico.  The child was born on October 6, 2014.  Shortly thereafter, [Washington County Child and Youth Services ("CYS")] became involved with the Mother and child.  The child was adjudicated dependent and placed in

_____

[1] Birth mother, T.B., voluntarily relinquished her parental rights on April 12, 2016.

_____

*  Retired Senior Judge assigned to the Superior Court.

foster care on January 8, 2015.  The Mother identified [L.T.] of New Mexico as the Father.  [CYS discovered Father in Clovis, New Mexico during February of 2016].

The Father testified that he was in phone contact with the Mother the first year of the child's life.  He became incarcerated on October 5, 2015.  Thereafter, he had no contact with the Mother or the child.  He provided no financial support, nor sent any written correspondence to the child.  After he learned in February of 2016 that the child was in foster care, Father has called the CYS caseworker, Andrew Albright, a few times.  Father was provided the phone number of the foster parents.  He has never called the foster parents or the child.  The Father was released in June of 2016, but his release was for only thirty (30) days, as he was rearrested for a parole violation.  Father expects to be released at his maximum, May 17, 2017.

Trial Court Opinion, 2/7/17, at 1-2 (citations to certified record omitted).

On April 1, 2016, CYS filed a petition to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) and (b). Counsel was appointed, and Father participated in the December 22, 2016 hearing via telephone.  CYS presented the testimony of its caseworker, Andrew Albright, the court appointed special advocate ("CASA"), Susan Caffrey, and the pre-adoptive foster mother ("Foster Mother"), C.M.  Father testified on his own behalf.

As it relates to Father's interactions with A.R., Mr. Albright testified that Father has not had any contact with his daughter, even though CYS reached out to Father and provided him Foster Mother's contact information. Father neglected to mail A.R. correspondence from prison or provide gifts or financial support.  Mr. Albright also stated that, while Father indicated that

- 2 -

he intended to contest the termination of his parental rights, he acknowledged his lack of appropriate housing and the ability to care for his daughter. Essentially, Mr. Albright concluded that it was in A.R.'s best interest to terminate Father's parental rights and proceed with adoption.

Similarly, in relation to A.R.'s bond with her pre-adoptive foster family, Ms. Caffrey testified that she was assigned to A.R. during February 2015 and that she has observed the child at least once per month. Ms. Caffrey described a loving relationship in which A.R. thrives and refers to her foster parents as "mother" and "father." She recommended that the orphans' court terminate parental rights in order to facilitate the family's adoption of A.R.

Foster Mother's testimony corroborated the evidence proffered by Mr. Albright and Ms. Caffrey. She outlined Father's failure to establish contact with A.R. and described the mutual bond that A.R. shares with the family. In sum, Foster Mother confirmed her desire to adopt A.R. and noted that she and her husband completed the adoption profile and were ready to proceed toward finalizing the adoption.

Following the evidentiary hearing, the orphans' court entered the above referenced order terminating Father's parental rights. Father filed a timely appeal and complied with Pa.R.A.P. 1925(a)(2)(i) by filing a

statement of errors complained of on appeal concurrent with his notice of

appeal.[2]  He frames the issue on appeal as follows:

> Did the trial court err in terminating Father's parental rights where the Agency failed to prove by clear and convincing evidence that Father evidenced a settled purpose of relinquishing parental claims to the child and failed to prove that Father refused or failed to perform parental duties?

Father's brief at 7.

The pertinent scope and standard of review of an order terminating

parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must

---

[2] The Rule 1925(b) statement presented two questions:

1. Did the trial court err in terminating Appellant's parental rights where the evidence was insufficient to sustain such a finding?

2. Did the trial court err in conducting a § 2511(b) analysis where there was insufficient evidence from which to conclude that the father's bond should be severed?

While the orphans' court complained that Father's assertions were too general, it addressed the claims nevertheless.  We agree that Father's first issue is stated broadly; however, in light of the fact that CYS sought to terminate parental rights under only one of the enumerated statutory grounds, the issue was not too vague for review.  Similarly, although Father subsequently abandoned his second issue, it is clear that the claim assailing the §2511(b) analysis was stated concisely.  Thus, to the extent that the orphans' court found that either of the issues raised in the concise statement were waived pursuant to Pa.R.A.P. 1925(b)(4), we reject that notion.

stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re M.M.*, 106 A.3d 114, 117 (Pa.Super. 2014) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa.Super. 2005)). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In the Interest of T.M.T.*, 64 A.3d 1119, 1124 (Pa.Super. 2013).

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re R.N.J.*, 985 A.2d 273, 276. The trial court is free to make all credibility determinations, and may believe all, part, or none of the evidence presented. *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004). If the findings of the trial court are supported by competent evidence, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003).

*Id*.

Termination of parental rights is governed by 23 Pa.C.S. § 2511, which provides in pertinent part as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

Termination of parental rights requires a "bifurcated analysis" under § 2511(a) and (b). *Adoption of C.J.P.*, 114 A.3d 1046, 1049 (Pa.Super. 2015). We explained,

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id*. at 1049-50 (quoting *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007)).

Herein, the trial court concluded that CYS met its burden to terminate Father's parental rights to A.R. pursuant to § 2511(a)(1), which "provide[s] grounds for termination if the parent evidenced a settled purpose of

- 6 -

relinquishing parental claim to a child, or has refused or failed to perform parental duties for a period of at least six months." ***In re Adoption of S.P.***, 47 A.3d 817, 828 (Pa. 2012). The petitioning party must produce clear and convincing evidence of conduct that fulfills either one of the two requirements outlined in § 2511(a)(1), it does not have to establish both. ***In re D.J.S.***, 737 A.2d 283, 285 (Pa.Super. 1999) ("parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.") While the statute targets the six months immediately preceding the filing of the petition to terminate, the trial court must consider the entire history of the case and not apply the six-month statutory period mechanically. ***In re of K.Z.S.***, 946 A.2d 753, 758 (Pa.Super. 2008).

Our Supreme Court has noted that parental duty under § 2511(a)(1) includes "an affirmative duty to love, protect and support" the child and "to make an effort to maintain communication with that child." ***In re Adoption of S.P.***, ***supra*** at 828. When the parent's fulfillment of those duties is made more difficult by incarceration, "we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child." ***Id***. Finally, our Supreme Court explained,

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's

explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 92 (Pa. 1998).

Father argues that he never evidenced a settled purpose to relinquish his parental claim to his daughter or failed to perform parental duties. He continues that his incarceration limited the resources that he could provide A.R. and impaired his ability to contact her. In sum, Father insists that the evidence sustains neither the orphans' court's finding that he abandoned A.R. nor its conclusion that he failed to exercise reasonable firmness in attempting to overcome the obstacle of his incarceration. We disagree.

In rejecting this claim, the trial court reasoned,

> During the six months in question, Father performed no parental duties. The Court recognizes that Father did not know of the child's whereabouts . . . until February of 2016 . . . , but [he] made no efforts to locate her. The Father's nephew is married to Mother's sister. Father is familiar with Mother's family[, but he] did not contact them to assist in locating Mother. Father took no legal action to locate his daughter. He was contacted in February of 2016 and told that A.R. was in foster care. Even after learning this, Father did not call the foster parents to inquire of A.R.'s well-being or send any cards, photos or gifts to her through CYS. Although the Court finds that . . . CYS . . . should have made a more thorough effort to locate Father, their performance has little to do with an examination of Father's conduct. Whether the child was with Mother or in foster care, the Father made no effort to be a part of her life. His conduct even after the filing of a termination petition, which he was served in April of 2016, shows his continued lack of effort. Father claims that he called the Agency or caseworker numerous times but never received a return phone call. The Court finds [the CYS] caseworker . . . credible

that he did receive messages from Father a few times and he spoke with Father. Father never wrote to the Agency complaining o[r] demanding more contact. Communication with or by an incarcerated person is usually best done by mail. When Father was released from custody, he failed to contact either the child or CYS. Father was appointed counsel on May 2, 2016 and was provided contact information. Father has clearly not performed any parental duty. Although incarcerated, Father could have made efforts to be a part of the child's life and did not do so. Examining his conduct and considering his explanation establish that he failed to perform any parental duties and evidenced a settled purpose of relinquishing his parental rights.

Trial Court Opinion, 2/7/17, at 5-6.

For all of the following reasons, we find that the certified record sustains the orphans' court's rationale. Our review of the record confirms that Father failed to adduce any evidence to demonstrate that he exercised any degree of firmness to overcome the obstacle of incarceration or to support his stated excuses and justifications for his inaction. To the contrary, the certified record confirms that CYS established by clear and convincing evidence that Father failed to utilize available resources to establish a parental relationship with his daughter or exercise reasonable firmness to resist the obstacles attendant to his incarceration. No relief is due.

Finally, while Father abandoned any issue with respect to § 2511(b), we review the trial court's needs and welfare analysis in an abundance of caution. We note that no parental bond exists between Father and A.R. Rather, as the orphans' court accurately observed in its opinion, the

meaningful parental bond in this case is among A.R. and her foster parents, a pre-adoptive resource.

> We highlight the court's reasoning as follows:
>
> The Father has never met the child nor has he ever talked with her. The caseworker testified that no bond between Father and daughter exists. While the Father undoubtedly loves the child and feels a bond, the child could not experience any bond with him. She has been in placement since shortly after her birth. She has never met him, has never seen him and never has heard his voice; Father has never sent her a picture of himself. Because no bond exists, terminating the Father's rights and forever severing any bond would have no detrimental effect. The child is capable of bonding. She has no special needs. She is bonded with her current foster parents, who are also an adoptive resource.

Trial Court Opinion, 2/7/17, at 6. As the certified record supports the orphans' court's factual determinations, we do not disturb its conclusion that terminating Father's parental rights best satisfies A.R.'s developmental, physical and emotional needs and welfare.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/31/2017

- 10 -